DETERMINED IN THE

## FOURTH DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1910.

### Harry Carlock, Appellee, v. Illinois Central Railroad Company, Appellant.

PERSONAL INJURIES—*what essential to recovery.* In order to entitle a plaintiff to recover in an action for personal injuries he must establish, first, the fact that the injury was caused by some act of negligence on the part of the defendant, and, second, that he, at the time of the injury, was in the exercise of due care and caution for his own safety.

Action in case for personal injuries. Appeal from the Circuit Court of Fayette county; the Hon. S. L. DWIGHT, Judge, presiding. Heard in this court at the February term, 1909. Affirmed. Opinion filed November 13, 1909. Rehearing denied March 23, 1910.

BROWN & BURNSIDE, for appellant; JOHN G. DRENNAN, of counsel.

ALBERT & MATHENY and E. B. SPURGEON, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

Appellant prosecutes this appeal to review the record in a cause, wherein appellee, a minor 16 years of age, obtained a judgment against it of $1,000 for injuries received by him while at work on a gravel train

200     APPELLATE COURTS OF ILLINOIS.

Carlock v. Illinois Cent. R. Co., 155 Ill. App. 199.

on appellant's railroad. There is very little contro-
versy as to the facts in this case, which are substan-
tially as follows:

In the latter part of July, 1907, appellee commenced
working for appellant, as one of about 25 men, called
the "extra gang," employed in surfacing the railroad
track, and in that connection distributing gravel along
the same. In unloading the gravel train, the doors
along the sides of the cars were opened and a plow in
the shape of a V was pulled forward from the car next
to the caboose through the cars, the ends of which were
opened, by means of a wire rope wound around a drum
turned by a stationary engine on the car next the loco-
motive engine. As the plow was pulled forward,
gravel would be forced through the side openings and
as it passed from one car to another, considerable
quantities of gravel would fall between the ends of the
cars. The plow, however, did not thoroughly remove
all gravel and stone from the cars, and it was neces-
sary for some of the men of the "extra gang" to fol-
low after and remove the same, so that the sides of the
cars could be again closed. Appellee had assisted in
unloading gravel trains on five or six occasions, prior
to the time he was injured. On October 9, 1907, the
gravel train was sent to Ramsey, Illinois, arriving
there about noon. On account of a disabled car ahead
of it, the plow car, which was on a switch, could not
be gotten out and attached to the gravel train until
evening. When everything was in readiness for the
unloading of the train, the foreman instructed certain
men of the gang to attend to the drum and engine,
others to follow the train on a hand car and remove
rocks and boulders that might remain on the track, and
still others, among whom was appellee, to get upon the
gravel cars, open the doors and then follow the plow
to remove such material as it failed to unload. The
train, which was composed of an engine, 25 gravel cars,
a plow car and a caboose, at about 6:30 P. M., pulled
down to the place where the gravel was to be unloaded.

The track superintendent and the foreman were both riding on the train with lanterns, the only other lantern being one carried by the conductor. After some five cars had been unloaded and while the train was going from 5 to 7 miles an hour, appellee, who was engaged in the work assigned to him, fell between two of the cars. His leg was run over and crushed so that he suffered great bodily pain and is now a cripple.

Witnesses for appellant testified that the night was clear and starlight, while others for appellee swore that it was a very dark night. Appellee testified that it was "awful dark" and that he could only see five or six feet to distinguish anything; that there were no lights and no ends in the gravel car; that he went along holding with his hands to the sides of the car, scooping off gravel and kicking off rocks; that he was watching for the end of the car, feeling along with his feet but could not see the space between two cars; that the cars seemed to run kind of rough and bumpy; that the first thing he knew he was off on the ground, but did not know how he got there; that he thought he fell between the cars; that the nearest lights were on the plow about two cars away; that he never helped unload a train at night but once before and then some of the men had lanterns.

After appellee was injured the unloading was discontinued and the train sidetracked until the next morning, when the balance of the load was removed.

Counsel for appellant make no complaint in regard to the instructions or the rulings of the court below upon the admission or rejection of evidence but rely for a reversal of the case solely upon the proposition that the evidence discloses no cause of action.

The only question presented for our consideration is therefore one of fact. It was necessary, as stated by appellant, that in order to entitle appellee to a verdict, he should first establish the fact that the injury was caused by some act of negligence on the part of appellant, and second, that he at the time of the injury

was in the exercise of due care and caution for his own safety. Incidental to this was the question whether the injury of appellee was due to one of the risks incident to his employment, which he assumed. These questions were, under the circumstances of this case, all questions of fact for the jury which have been decided in favor of appellee.

It is unnecessary, nor would it be profitable, to encumber this opinion with a lengthy discussion of the evidence introduced and its effect, and we content ourselves with saying that it was sufficient to warrant the jury in finding the verdict they did.

*Affirmed.*